FILED

2016 Apr-28 PM 03:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| AXIS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:16-CV-82-VEH |
| | ) | |
| APPEAL INSURANCE AGENCY, | ) | |
| INC., CHAD SANDERS, AND | ) | |
| SANDERS CABINETRY, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

## MEMORANDUM OPINION AND ORDER

The above-entitled civil action is before the Court on the Plaintiff's Renewed Motion for Default Judgment Against Defendant Appeal Insurance Agency ("Appeal"). (Doc. 18).

## I.    INTRODUCTION

The Court makes the following findings of fact from the allegations in the Plaintiff's Complaint and the attachments thereto.[1]

### A.    The Sanders Lawsuit

AXIS Insurance Company ("Axis") filed the Complaint in this action on January

---

[1] "Documents referenced in the complaint and attached thereto are considered to constitute the initial pleading. Fed. R. Civ. P. 10(c)." *United States v. Estate of Powell*, No. 1:13-CV-104 WLS, 2014 WL 1572475, at *1, n. 1 (M.D. Ga. Apr. 18, 2014) (Sands, J.).

18, 2016.  In its Complaint, Axis alleges that, on February 2, 2015, Chad Sanders and Sanders Cabinetry, LLC (hereafter collectively referred to as "Sanders") filed suit against Appeal and others in the Circuit Court of Calhoun County, Alabama. (hereafter the "Sanders Complaint" or the "Sanders lawsuit"). (Doc. 1 at 6, ¶ 18; doc. 1-6 (Sanders Complaint). The Sanders Complaint alleges that, in December 2013, Chad Sanders contracted with West Insurance, Inc. (hereinafter "West") to purchase "dwelling fire and commercial general liability insurance for three (3) rental properties; that West represented that coverage was brokered through and with Appeal; and that Appeal bound coverage with Lloyds." (Doc. 1 at 6, ¶ 19; Doc. 1-6 at 9, ¶¶ 9-11). The Sanders Complaint further alleges that Lloyds issued policies to Sanders through Appeal; that Sanders financed the premiums through Gulf Finance, LLC; that Sanders made a down payment; and that Sanders and/or Sanders Cabinetry, LLC began making monthly payments as they became due. (Doc. 1 at 7, ¶ 20, Doc. 1-6 at 7, ¶¶ 13-15). Sanders further alleged that, after the policies had been in place for six (6) months, one of the homes was vandalized and damaged. (Doc. 1 at 7, ¶ 21, Doc. 1-6 at 8, ¶¶ 16-18). The Complaint further alleges that Sanders notified West of the damage and loss, that West represented it would submit the claim to Lloyds for adjustment, and that weeks later West notified Sanders that there was no policy in place for the rental houses. (*Id.*)  Based upon these allegations, the Sanders Complaint asserted the following claims against

Appeal: (1) Negligent and/or Wanton Procurement of Insurance; (2) Breach of Contract; (3) Bad Faith, Failure to Pay; (4) Fraud; (5) Conversion; (6) Outrage; and (7) Conspiracy to Defraud. (Doc. 1 at 7, ¶ 22 and Doc. 1-6 at 9-13).

On or about April 23, 2015, Axis first received notice of the Sanders Complaint. (Doc. 1 at 8, ¶ 23). Prior to this, Axis had not received any notice of a claim, potential claim or lawsuit against Appeal by Sanders. (*Id.*) No claim, as that term is defined in the Axis policy, had been made against Appeal by Sanders prior to filing the Sanders Complaint. (*Id.*)

Appeal was already in default at the time Axis received notice of the Sanders Complaint. (*Id.* ¶ 24). Axis agreed to provide a defense to Appeal under a full and complete reservation of rights, specifically including the right to seek a judicial determination as to its duty to defend or indemnify Appeal in this matter. (*Id.*, Doc. 1-7 (Reservation of Rights Letter), Doc. 1-8 (Affidavit of service showing service of letter on John Paul Kill on May 12, 2015)).

**B.**   **The Axis Policies**

Axis issued three Miscellaneous Professional Liability policies to Appeal (collectively, the "Policies") that are at involved in this action. (Doc. 1 at 10, ¶28). The first policy issued to Appeal is Axis Miscellaneous Professional Liability policy no. LAT001P0005192001, effective October 25, 2011 through October 25, 2012 (the

"2011-12 Policy"). (Doc. 1 at 10, ¶28; Doc. 1-9, p.3). The second policy issued to Appeal is Axis Miscellaneous Professional Liability policy no. LAT001P0005192002, effective October 25, 2012 through October 25, 2013 (the "2012-13 Policy"). (Doc. 1 at 10, ¶29; doc. 1-10, p.3). The third policy issued to Appeal is Axis Miscellaneous Professional Liability policy no. LAT001P0005192003, effective October 25, 2013 through October 25, 2014 (the "2013-14 Policy"). (Doc. 1 at 10, ¶30; doc. 1-11, p.3). For purposes of the instant motion, all three policies contain the same relevant terms, to wit, the insuring agreement of each policy states as follows:

> The Insurer shall pay on behalf of any Insured in connection with a Wrongful Act, committed on or after the Retroactive Date set forth in Item 5. of the Declarations of this Coverage Part and before the expiration of the Policy Period, all Loss arising from any Claim first made against such Insured during the Policy Period or, if applicable, Extended Reporting Period or Runoff Period, and reported to the Insurer in writing as soon as practicable after any Insured becomes aware of a Claim but in no event later than ninety (90) days after the expiration of the Policy Period or, if applicable, Extended Reporting Period or Runoff Period.

(Doc. 1 at 11, ¶31; docs. 1-9 at 20, 1-10 at 20, 1-11 at 20).  The policy period for the last policy issued to Appeal by Axis ended on October 25, 2014. (Doc. 1-11 at 3).

### C.   The Instant Declaratory Judgment Action

Axis filed this Declaratory Judgment action on January 18, 2016. (Doc. 1). The record reflects that Appeal was timely served on January 19, 2016 through personal service on its registered agent, Jack Kill. (Doc. 7).  Appeal has not filed an Answer or

otherwise made an appearance in this case.   On March 21, 2016, Axis filed a Motion for Entry of Default against Appeal. (Doc. 13). On March 22, 2016, the Clerk entered default against Appeal. (Doc. 14).   The record reflects that the Entry of Default was mailed to Appeal, in care of Kill, that same day.

The Plaintiff filed the instant Renewed Motion for Default Judgment on April 1, 2016.   (Doc. 18).   In April 4, 2016, this Court ordered Appeal to show cause why the judgment should not be granted.  (Doc. 19).  Appeal has filed no response.

## I.    ANALYSIS

Rule 55, Fed.R.Civ.P., provides in pertinent part:

(a) **Entering a Default.**   When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

(b) **Entering a Default Judgment.**

* * * * *

(2) **By the Court.**   In all other cases, the party must apply to the court for a default judgment.  A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared.  If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing.  The court may conduct hearings or make referrals — preserving any federal statutory right to a jury trial — when, to enter or effectuate judgment, it needs to:

(A) conduct an accounting;
(B) determine the amount of damages;

5

(C) establish the truth of any allegation by evidence; or

(D) investigate any other matter.

Fed.R.Civ.P. 55.

Because default has been entered against Appeal, the allegations of the Plaintiff's complaint are taken as true and Appeal's liability is established. *See, e.g., AutoTec, L.L.C. v. Auction Access Auto, Inc.*, 2:12-cv-00896-RDP, 2012 WL 2357951, at *2 (N.D.Ala. June 18, 2012) ("Upon default, the well-pleaded allegations of a complaint are taken as true. Because Defendants have previously been declared in default . . . their liability is established.") (internal citations omitted); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688 (3d ed. 1998) ("If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").

The court's analysis of the Plaintiff's Renewed Motion for Default Judgment involves a two-step process. First, the court must satisfy itself that it has jurisdiction over the parties and the subject matter of the lawsuit. *See Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994) (holding that district courts "always have an obligation to examine *sua sponte* their jurisdiction before reaching the merits of any claim"). Second, the Court must ensure that Axis has satisfied the elements of Rule 55, Fed.R.Civ.P., and is entitled to the default judgment it seeks. *See Nishimatsu Constr. Co v. Houston Nat'l*

*Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)[2] (explaining that "a defendant's default does not in itself warrant the court entering a default judgment" and that "[t]here must be a sufficient basis in the pleadings for the judgment entered").

### A.   Jurisdiction

#### 1.   *Personal Jurisdiction*

It is an elementary requirement that personal jurisdiction must be established in every case before a court has power to render any judgment. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982).  A court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant. *Royal Lace Paper Works v. Pest-Guard Prods.*, 240 F.2d 814, 816 (5th Cir. 1957). The record establishes that defendant Appeal was served with a copy of the Summons and Complaint, on January 19, 2016, through personal service on its registered agent, Jack Kill. (Doc. 7). Accordingly, the court finds that it has personal jurisdiction over the parties.

#### 2.   *Subject Matter Jurisdiction*

This is a declaratory judgment action.  It has been noted that

> [28 U.S.C.] § 2201, known as the Declaratory Judgment Act, fails to provide this Court with jurisdiction. Rather, § 2201 provides a *remedy* by

---

[2] All decisions of the former Fifth Circuit handed down prior to September 30, 1981, constitute binding precedent on this Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

authorizing the federal courts to issue declaratory judgments in certain situations which are not applicable here. *See, e.g., Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 672, 70 S.Ct. 876, 94 L.Ed. 1194 (1950) ("The Declaratory Judgment Act allowed relief to be given by way of recognizing the plaintiffs right even though no immediate enforcement of it was asked. But the requirements of jurisdiction ... were not impliedly repealed or modified."); *Appling County v. Mun. Elec. Auth.*, 621 F.2d 1301, 1303 (5th Cir.1980) (noting that just because the Plaintiff seeks declaratory relief under § 2201 it "does not absolve [it] of the necessity of bringing themselves within a jurisdictional statute"); *McDougald v. Jenson*, 786 F.2d 1465, 1476 (11th Cir.1986); *Borden v. Katzman*, 881 F.2d 1035, 1037 (11th Cir.1989).

*Bank of Am., N.A. v. U.S. I.R.S.*, 663 F. Supp. 2d 1308, 1315 (M.D. Fla. 2009) (Schlesinger, J.).   In this case, the Complaint alleges jurisdiction pursuant to 28 U.S.C. § 1332, which provides that subject matter jurisdiction exists if the suit is between "citizens of different States" and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs. . .." 28 U.S.C. § 1332.   "Complete diversity is an absolute requirement for a federal court to have jurisdiction under 28 U.S.C. § 1332." *Hedge Capital Investments Ltd. v. Sustainable Growth Grp. Holdings LLC*, 593 F. App'x 937, 940 (11th Cir. 2014).   "For diversity purposes, a corporation is a citizen of both the state where it is incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)." *MacGinnitie v. Hobbs Grp., LLC*, 420 F.3d 1234, 1239 (11th Cir. 2005).

The Complaint alleges that Axis is a corporation organized and existing under the laws of Illinois and has its principle place of business in Illinois. (Doc. 1 at 2, ¶3). Appeal

is a corporation organized and existing under the laws of Georgia and had its principle place of business in Georgia. (*Id.* at   ¶4). Sanders is a citizen of Alabama. (*Id.* ¶5). Finally, Sanders Cabinetry, LLC is a limited liability company organized under Alabama law whose sole member is Chad Sanders, and Chad Sanders is a citizen of Alabama. (*Id.* ¶6).  Since the Defendant has defaulted, these allegations are deemed to have been admitted and the court therefore finds that this suit is between "Citizens of different States."

The Complaint alleges that the amount in controversy in this action exceeds $75,000, exclusive of interests and costs.  (Doc. 1 at 1).  Since this allegation is deemed to be admitted, the court finds that the amount in controversy exceeded $75,000.00, exclusive of interest and costs, at the time the lawsuit was filed.

**B.**      **Axis Is Entitled to a Default Judgment Against Appeal**

Federal Rule of Civil Procedure 55(b)(2) allows the court to enter a default judgment when the Clerk has entered default and the party seeking judgment has applied to the court for a default judgment.  To determine whether the moving party is actually entitled to a default judgment, the court must review the sufficiency of the complaint and its underlying merits.  *See Stegeman v. Georgia*, 290 Fed. App'x 320, 323 (11th Cir. 2008) (citing *Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).  The law is well-settled that "a defaulted defendant is deemed to admit the

plaintiff's well-pleaded allegations of fact." *Tyco Fire & Sec.*, 218 Fed. App'x at 863. However, the Court has "an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2007). In this case, the Court finds that Axis has established that it is entitled to a default judgment against Appeal on this action for a declaratory judgment.

The Court first notes that:

> A federal court sitting in diversity, as in this case, must apply the choice of law principles of the state in which it sits. In determining which state's law applies in a contract dispute, Alabama follows the principle of *lex loci contractus*, applying the law of the state where the contract was formed. *Cherokee Ins. Co., Inc. v. Sanches,* 975 So.2d 287, 292 (Ala.2007).

*St. Paul Fire & Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC,* 572 F.3d 893, 895 n. 1 (11th Cir. 2009). Axis contends that the contract was formed in Georgia, because Appeal was a citizen of Georgia when the contract was signed. Doc. 18 at 9). In support of this argument, Axis cites *Am. Interstate Ins. Co. v. Holliday*, 376 So. 2d 701, 702 (Ala. 1979), for the proposition that "where [the] policyholder was a citizen of Georgia at the time of issuance of policy, Georgia law controlled." (*Id.*)[3]   However, in

---

[3]  Specifically, it states:

> Here, Appeal was a corporation organized under the laws of Georgia and had its principle place of business in Georgia when the subject AXIS policies were issued to Appeal. Further, the addresses listed in each policy's declarations pages are Georgia ones. (Doc. 1-9 p.3, Doc. 1-10 p.3, Doc. 1-11 p.3). Thus, Georgia law controls.

(*Id.*)

*Holliday*, <u>all</u> parties to the insurance agreement were citizens of Georgia. For that reason, the Alabama Supreme Court determined: "[w]e, therefore, decide the issue of the obligation to defend, pursuant to Georgia law." *Holliday*, 376 So. 2d at 702.

In the instant case the agreement was made between parties from different states. In the absence of any allegation in the Complaint as to where the contract was formed, or more information from Axis on this issue, the court is unable to determine under what law the agreements at issue should be examined.[4]

In the motion, Axis argues:

> The policy period for the last policy issued to Appeal by AXIS ended on October 25, 2014. (Doc. 1-11, p.3). The Sanders Complaint was filed on February 2, 2015, after the expiration of the last policy's policy period. (Doc. 1 ¶18, Doc. 1-6). No claim, as that term is defined in the AXIS policy, had been made against Appeal by Sanders prior to filing the Sanders Complaint. (Doc. 1 ¶23). Thus, <u>Sanders did not first make a claim against Appeal until after the expiration of the final AXIS policy. (Doc. 1, ¶38) For this reason, there is no insurance coverage afforded to Appeal under the policies issued by AXIS for the claims asserted in the Sanders Complaint, and AXIS is not obligated to defend Appeal against or indemnify Appeal for the claims asserted in the Sanders Complaint.</u>

(Doc. 18 at 11) (emphasis added). The policy language states that Axis "shall pay on behalf of any Insured in connection with a Wrongful Act, committed . . . before the expiration of the Policy Period." (Doc. 1 at 11, ¶31; docs. 1-9 at 20, 1-10 at 20, 1-11 at 20). It covers not only claims "first made against such Insured during the Policy

---

[4] Regardless, for the reasons noted below, the motion is still due to be granted.

Period," but also "if applicable, Extended Reporting Period or Runoff Period." (*Id.*)  In a footnote to its brief, Axis writes: "No Extended Reporting Period or Runoff Period endorsement was purchased by Appeal or provided for in the policies. (See, 1-9, 1-10, 1-11)[.]" (Doc. 18 at 10, n. 5).  This vague reference to three exhibits, which have at least 37 pages each, does not suffice to eliminate the possibility that such coverage existed. Further, there are indications on the third page of each of these exhibits that such coverage may have been purchased.  (*See* docs. 1-9 at 3; doc. 1-10 at 3; doc. 1-11 at 3 (discussing "Item 4," the "Extended Reporting Period").  Axis thus has not eliminated the possibility that the Sanders Complaint was filed within any possible "Extended Reporting Period," or "Runoff Period."

Axis also argues:

> Furthermore, the claim involving Sanders was not reported to AXIS until April 23, 2015. (Doc. 1, ¶38). April 23, 2015 is well over 90 days after the expiration of the last AXIS policy on October 25, 2014. Thus, this claim is also not covered under the insuring agreement of the AXIS policies because it is not a loss arising from a claim first made against Appeal during any of the AXIS policy periods and reported to AXIS in writing as soon as practicable after Appeal became aware of the claim, but in no event later than 90 days after the expiration of the final AXIS policy period. (Doc. 1, ¶38). Because the claim was not reported to AXIS within the ninety (90) days after the expiration of the last policy period, the claims made in the Sanders Complaint are not covered under the AXIS policies, and AXIS owes no duty to defend or indemnify Appeal for the claims made in the Sanders Complaint.

(Doc. 18 at 11-12) (emphasis added).   Again, however, the applicable policy language

required Appeal to report the claim to Axis "in writing as soon as practicable after any Insured becomes aware of a Claim but in no event later than ninety (90) days after the expiration of the Policy Period <u>or, if applicable, Extended Reporting Period or Runoff Period</u>." (Doc. 1 at 11, ¶31; docs. 1-9 at 20, 1-10 at 20, 1-11 at 20). Axis has not eliminated the possibility that Appeal's notice to Axis fell within any "Extended Reporting Period," or "Runoff Period."

Despite the foregoing, the policy language states that Axis "shall pay on behalf of any Insured in connection with a Wrongful Act," (doc. 1 at 11, ¶31; docs. 1-9 at 20, 1-10 at 20, 1-11 at 20). The Complaint alleges that "[t]he actions complained of by Appeal/Kill in the Sanders Complaint do not constitute a Wrongful Act as that term is defined in the policies." (Doc. 1 at 16, ¶39). Since this allegation is deemed to be admitted, there is no coverage under the policies. Axis has no duty to defend or indemnify Appeal.[5]

## II.    CONCLUSION

For the reasons stated herein, it is hereby **ORDERED, ADJUDGED**, and **DECREED** as follows:

1.    The Renewed Motion for Entry of Default Judgment of Axis is **GRANTED**;

---

[5]  This argument was not made by Axis. The Court, after conducting an independent review of the Complaint and motion, makes this finding.

2.    **JUDGMENT BY DEFAULT** is hereby **ENTERED** in favor of Axis and against Appeal; and

3.    The court **DECLARES** that, under the policies identified in this opinion, Axis owes no duty to defend or indemnify Appeal for any of the conduct alleged in the Sanders Complaint.

**DONE** and **ORDERED** this 28th day of April, 2016.

**VIRGINIA EMERSON HOPKINS**
United States District Judge